FILED
2015 Mar-02  PM 01:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | |
|---|---|
| TARA HENDERSON, | ] |
| | ] |
|     **Plaintiff,** | ] |
| | ] |
| **v.** | ] |
| | ]   **Case No.: 13-cv-1166-KOB** |
| MID-SOUTH ELECTRONICS, INC., | ] |
| | ] |
|     **Defendant.** | ] |
| | ] |
| | ] |

## MEMORANDUM OPINION

This matter is before the court on Defendant Mid-South's "Motion for Summary Judgment."  (Doc. 23).  For the reasons discussed below, the court will GRANT Mid-South's motion for summary judgment IN PART. The court will ENTER SUMMARY JUDGMENT in favor of Mid-South as to the Wage Discrimination claim in Count II and the Equal Pay Act ("EPA") claim in Count III.  The court will DENY SUMMARY JUDGMENT as to the Race Discrimination claim in Count I, the Gender Discrimination claim in Count II, the Retaliation claim in Count IV, and the Family Medical Leave Act ("FMLA") Interference and Retaliation claim in Count V.

## I.  STANDARD OF REVIEW

Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  When a district court reviews a motion for summary judgment, it must determine two

1

things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving

party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of

the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986) (quoting Fed. R. Civ. P. 56).  Once the moving party meets this burden, the

burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact

that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.

1991).

In reviewing the evidence submitted, the court must "view the evidence presented

through the prism of the substantive evidentiary burden," to determine whether the nonmoving

party presented sufficient evidence on which a jury could reasonably find for the nonmoving

party. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir.

1988).  In doing so, all evidence and reasonable inferences drawn from the underlying facts must

be viewed in the light most favorable to the non-moving party.  *Graham v. State Farm Mut. Ins.

Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).  After both parties have addressed the motion for

summary judgment, the court must grant the motion *if* no genuine issues of material fact exist

*and if* the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

## II.  STATEMENT OF FACTS

Tara Henderson, a black female, began working at Mid-South in 1992.  Mrs. Henderson

was originally employed as an operator and then was promoted to team leader before finally

becoming a supervisor in 2005.  Mrs. Henderson worked as a supervisor in numerous

departments before eventually being transferred to the Molding Department.  As a Molding

Supervisor, Mrs. Henderson earned $31,000 a year.  This amount was less than the wages paid to

each of the other Molding Supervisors, all of whom were male.

Human Resource Director Mark Weaver explained that the disparity in pay was based on

the fact that all of the other Molding Supervisors—Thomas Carter, Billy Cash, David Clark, and

Roger Eychner[1]—had additional technical skills that Mrs. Henderson lacked.  Mr. Carter could

tear down molds and repair and adjust the molding machines.  Mr. Cash could hang a mold, work

with resins, set dryers up, perform troubleshooting, and set up the molding machines.  Mr. Clark

had years of experience in the plastic molding industry and could repair and set up the molding

machines.  Mr. Eychner could also set up and repair the molding machines as well as calibrate

the machines to produce a better part.

Although the parties agree that Mrs. Henderson lacked the technical skills and knowledge

of her male counterparts, the parties dispute whether the men's technical abilities and experience

were relevant to the day-to-day duties of the Molding Supervisor position.  In support of its

position, Mid-South presents testimony from numerous Mid-South employees that 50–70% of a

Molding Supervisor's duties consisted of performing technical work on the molding machines.

In contrast, Mrs. Henderson testified that her supervisor specifically instructed her *not* to perform

---

[1] The parties dispute Mr. Eychner's job title.  Mrs. Henderson testified that Mr. Eychner was a
Molding Supervisor while Mr. Robertson testified that he was a Process Engineer.  Given that this case is
before the court on Mid-South's motion for summary judgment, this court construes the facts in favor of
Mrs. Henderson and assumes that Mr. Eychner is a Molding Supervisor for the purposes of this motion.

any work on the molding machines.  She also testified that she performed all of the same duties as her male counterparts.

**Mrs. Henderson's absences from work**

In 2011, Mrs. Henderson began suffering from chronic joint pain, edema, and joint swelling.  Although Mrs. Henderson saw multiple physicians for her symptoms from 2011 to 2012, she was not diagnosed with fibromyalgia until 2013.  As a result of her illness, Mrs. Henderson frequently missed work due to flare-ups and doctor's appointments.  Mrs. Henderson's ongoing battle with fibromyalgia culminated in December of 2011 with a three-day hospitalization.  Following her hospitalization, Mrs. Henderson's physician excused her from an additional four days of work so that she could recuperate from her illness.  In total, Mrs. Henderson missed twenty-two days of work in 2011.  Although Mrs. Henderson submitted a doctor's note for the days that she missed because of her hospitalization and subsequent recovery, she often failed to provide doctor's notes or call in to work for her absences.

Mrs. Henderson's absenteeism did not go unnoticed at Mid-South.  On January 3, 2012, Human Resources Director Mark Weaver and Jean Lawson, who handled general personnel responsibilities for Mid-South, met with Mrs. Henderson to discuss her attendance.  At the meeting, Mrs. Henderson explained that she was still awaiting a diagnosis but was feeling better and hoped to have better attendance in the future.  Mr. Weaver and Ms. Lawson communicated to Mrs. Henderson that they understood she was having health issues and that they were willing to work with her.  However, they told Mrs. Henderson that she needed to understand that her excessive absences negatively impacted the company.  Mr. Weaver and Ms. Lawson told Mrs.

Henderson that her attendance needed to improve in the next year, and they reminded her that she needed to call into work and provide a doctor's note if she was going to be absent.

**Mrs. Henderson first complains of discrimination**

The fact that Mrs. Henderson was paid less than her male counterparts bothered her, and in June 2012, she met with Mr. Weaver and Ms. Lawson to discuss what Mrs. Henderson believed was race and gender-based disparate pay. At the meeting, Mrs. Henderson also complained that her supervisor, Mr. Robertson, was discriminating against her by intentionally omitting her from work e-mails, excluding her from meetings, and undermining her authority in front of her subordinates. Additionally, Mrs. Henderson complained about a conversation Mr. Robertson had with her regarding her decision to promote an African-American employee, Kimisha Taylor. Specifically, Mrs. Henderson cited Mr. Robertson's statement to her that "[i]t's going to look like favoritism because you're promoting a black person and you're black." Although the parties agree Mr. Robertson made this statement to Mrs. Henderson, the parties dispute the context in which the statement was made.

Mr. Robertson testified that Mrs. Henderson attempted to promote Ms. Taylor without posting the opening as required by Mid-South's hiring protocols. He testified that he spoke with Mrs. Henderson about her decision to promote Ms. Taylor and underscored the importance of posting the job to allow all employees an equal opportunity to apply. Mr. Robertson stated his purpose in making the statement to Mrs. Henderson was to convey to her that failing to post the job could give the appearance of race-based preferential treatment. In contrast, Mrs. Henderson testified that Mr. Robertson's statement was not related to whether she would post the position. She knew the position needed to be posted and intended to do so. Mrs. Henderson understood

5

Mr. Robertson's statement to mean that promoting an African-American would look bad to Mr. Robertson's supervisors and that he would have a difficult time explaining Mrs. Henderson's decision.

**Mid-South Transfers Mrs. Henderson to Assembly Supervisor**

The same month that Mrs. Henderson lodged her complaint of discrimination with Mr. Weaver and Ms. Lawson, Mid-South transferred her out of her Molding Supervisor position into a Production Supervisor position in the Assembly Department. Mrs. Henderson learned of her transfer in a meeting with Mr. Robertson, Mr. Weaver, and Ms. Lawson on June 27, 2012. During the meeting, Mrs. Henderson expressed concern that the change in position would make it difficult for her to see her physician because she had scheduled her doctor's appointments around the twelve-hour shifts she worked as a Molding Supervisor, not the eight-hour shifts she would work in the Assembly Department. Nevertheless, Mrs. Henderson's supervisors explained that Mid-South was opening a new assembly line and they believed that she would do a good job motivating the employees in the Assembly Department. In July of 2012, Mid-South transferred Mrs. Henderson to the Assembly Department. In the months following Mrs. Henderson's transfer, Mid-South's other departments transitioned from twelve-hour to eight-hour shifts.

**Mrs. Henderson again complains of discrimination**

In August 2012, Mrs. Henderson again met with Mr. Weaver and Ms. Lawson to discuss Mr. Robertson's alleged discriminatory treatment of African Americans. In the meeting, Mrs. Henderson again complained about Mr. Robertson's statement to her regarding her decision to promote an African-American employee. She also complained that Mr. Robertson continued to

treat her differently and refused to speak to her.  The record does not reflect whether Mr. Weaver or Ms. Lawson took any steps in response to Mrs. Henderson's complaint.

**Mid-South Terminates Mrs. Henderson**

Mrs. Henderson's attendance at Mid-South improved during 2012, and she missed only four days of work between January and September.   On Friday, September 7, 2012, Mrs. Henderson saw Nurse Practitioner Sammye Bradley.  Nurse Practitioner Bradley's notes from the visit indicate that Mrs. Henderson presented with the following symptoms: "skin tender to touch," "body ache," "fatigue," "burning urination," and "low back pain."  At the end of the visit, Nurse Practitioner Bradley gave Mrs. Henderson a note excusing her from work from September 7, 2012 to September 12, 2012.

That same day, Mrs. Henderson called Mr. Robertson to report that she would be out for the day due to health issues.  Mr. Robertson did not answer his phone so Mr. Henderson left a voicemail.  Mrs. Henderson then called Ms. Lawson and told Ms. Lawson that Nurse Practitioner Bradley had taken her out of work.  Ms. Lawson asked Mrs. Henderson how long she would be out of work to which Mrs. Henderson responded that she was not sure.  Mrs Henderson then asked if she needed to take any additional steps or fill out any form to insure that her absences were excused.  Ms. Lawson told Mrs. Henderson that she did not need to fill anything out and directed Mrs. Henderson to provide a doctor's note for the days she was out.  On Monday, September 10, 2012, Mrs. Henderson called Mr. Robertson and told him that she was out of work and that she was not sure when she would be able to return.  In her conversation with Mr. Robertson, Mrs. Henderson told Mr. Robertson that she needed her job, and she asked Mr. Robertson to work with her through her illness.

7

Following her conversation with Mr. Robertson, Mrs. Henderson continued to be absent from work.  She did not contact anyone at Mid-South until September 14, 2012, when she called Ms. Lawson to arrange for her husband to pick up her check.  By this point Mr. Robertson had already spoken with Mr. Weaver about Mrs. Henderson's absences, and the two men had decided to terminate Mrs. Henderson's employment.  In Ms. Lawson's conversation with Mrs. Henderson, Ms. Lawson told Mrs. Henderson that she would need to come down in person to pick up her check.  She did not ask Mrs. Henderson to bring a doctor's note or any proof that she had been out of work for medical reasons.

When she arrived at work, a guard directed Mrs. Henderson to meet with Ms. Lawson and another employee.  In the meeting, Ms. Lawson informed Mrs. Henderson that Mid-South was terminating her for "excessive absenteeism, failure to call in, and failure to follow instructions after repeated counseling."  (Doc. 26-1, at 4).  Ms. Lawson gave Mrs. Henderson a termination form that Ms. Lawson had signed along with Joseph McKinley, Mid-South's Vice-President, and Mr. Robertson.  The termination form also bore Mr. Weaver's initials.  Following Mrs. Henderson's termination, Mr. Robertson absorbed Mrs. Henderson's work duties into his own.

Ms. Lawson never asked Mrs. Henderson for a doctor's excuse, and Mrs. Henderson did not bring a doctor's note with her to the September 14 meeting because she believed she was only coming in to pick up her check.  After her termination, Mrs. Henderson saw Nurse Practitioner Bradley  again on September 17, 2012.  At that visit, Nurse Practitioner Bradley wrote Mrs. Henderson a note retroactively excusing her from work from September 10–24, 2012.

Mrs. Henderson never gave this note to Mid-South because they terminated her without ever asking for a doctor's note.

On September 28, 2012, Mrs. Henderson filed a charge of discrimination with the EEOC. The EEOC subsequently issued Mrs. Henderson a Right-to-Sue Letter, and she initiated the current suit against Mid-South on June 21, 2013.

### III.  DISCUSSION

**A.     Mrs. Henderson's FMLA Retaliation and Interference Claim**s **- Count V**

The FMLA guarantees employees the right to take up to twelve weeks of unpaid leave from work because of a serious medical condition, and prohibits employers from discriminating or retaliating against employees who exercise or attempt to exercise their rights under the FMLA. *See Brungart v. BellSouth Telecomm.*, 231 F.3d 791, 798 (11th Cir. 2000).  To state a claim under the FMLA, a plaintiff must first demonstrate that she qualifies for the protections of the FMLA.  *See Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1296 (11th Cir. 2001).  To qualify, a plaintiff must demonstrate, among other things, that she suffered from a "serious health condition."  *See* 29 U.S.C. § 2611(11)*.*  Once a plaintiff establishes that she qualifies under the FMLA, she must then prove that her employer's actions violated the provisions of the FMLA.  *See Strickland*, 239 F.3d at 1296.

In the absence of direct evidence, courts evaluating retaliation or discrimination claims under the FMLA apply the *McDonnell Douglas* burden shifting framework.  *See Strickland*, 239 F.3d 1296.  Under this  framework, a plaintiff must first establish a prima facie case.  *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).  If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate reason for the

challenged employment action.  *See Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998).  Once a defendant meets this burden of production, the plaintiff then bears the burden of proving that the defendant's proffered reasons are pretextual.  *Id*.

In the present case, Mid-South does not argue that Mrs. Henderson cannot establish her prima facie case of either discrimination or retaliation.  Instead, Mid-South contends that Mrs. Henderson does not qualify for the protections of the FMLA because she did not suffer from a "serious health condition."  The FMLA defines a "serious health condition" as an "illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; *or* (B) continuing treatment by a health care provider."  29 U.S.C. § 2611(11).  Mrs. Henderson does not contend that her work absences resulted from inpatient care.  Therefore, she must show that her absences related to "continuing treatment by a health care provider."  The pertinent Department of Labor regulations define "continuing treatment by a health care provider" as

> a period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, *and* any subsequent treatment or period of incapacity relating to the same condition, that involves:
>
> (A)    Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services . . . under orders of, or on referral by, a health care provider; or
>
> (B)    Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.115(a) (emphasis added).

Mid-South identifies two ways in which it alleges Mrs. Henderson fails to establish that her absences were related to "continuing treatment by a health care provider."  First, Mid-South contends that Mrs. Henderson did not present evidence that she was incapacitated—i.e. unable to work—during her September absences.  Second, Mid-South contends that Mrs. Henderson failed to establish that she suffered from a "period of incapacity for *more than three consecutive days*."  However, Nurse Practitioner Bradley's notes preclude summary judgment on these grounds.

Based on Nurse Practitioner Bradley's notes excusing Mrs. Henderson from work from September 7, 2012 to September 24, 2012, a reasonable factfinder could conclude that Mrs. Henderson was unable to work and therefore was incapacitated.  Additionally, assuming that Mrs. Henderson in fact was incapacitated, Mrs. Bradley's notes are compelling evidence that Mrs. Henderson's incapacitation lasted for more than three consecutive days—eighteen to be precise.  As such, the evidence, when viewed in a light most favorable to Mrs. Henderson, at least creates an issue of fact as to whether she suffered from a period of incapacity for more than three consecutive days and qualifies for the protections of the FMLA.

Mid-South next argues in the alternative that even if Mrs. Henderson was entitled to FMLA leave, summary judgment is appropriate because it terminated Mrs. Henderson's employment for a legitimate reason—she failed to comply with Mid-South's call-in policy.  Because Mid-South offers a legitimate reason for its actions, the burden shifts to Mrs. Henderson to establish pretext.  "To show pretext, a plaintiff must come forward with evidence . . . sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision."  *Hulbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006).  Mrs. Henderson meets this burden.

11

Mrs. Henderson establishes pretext by pointing to evidence from which a reasonable factfinder could conclude that she did not in fact violate Mid-South's call-in policy but instead complied with Mid-South's instructions regarding her future absences.  In her deposition, Mrs. Henderson testified that on September 7, 2012, she left a message on Mr. Robertson's phone telling him that she was going to be absent.  Mrs. Henderson then called Ms. Lawson in human resources and told Ms. Lawson that her nurse practitioner had taken her out of work.  In that conversation, Ms. Lawson directed Mrs. Henderson to bring an excuse from the doctor when she returned to work.  Mrs. Henderson received two doctor's notes excusing her from work for the days that she was absent and testified that she would have provided them to Mid-South if she had been afforded the opportunity.  Based on this evidence, a reasonable factfinder could conclude that Mid-South's proffered reason for terminating Mrs. Henderson—that she failed to comply with its call-in policy—is pretextual because Mrs. Henderson followed the instructions of Ms. Lawson, a member of Mid-South's Human Resource Department.

Because Mrs. Henderson created a question of material fact as to whether she qualified for the protections of the FMLA and whether Mid-South violated the FMLA by terminating her employment, Mid-South's motion for summary judgment is due to be denied as to these claims

**B.    Mrs. Henderson's EPA Claim - Count III**

Mrs. Henderson contends that she was the victim of wage discrimination because Mid-South paid her less for performing a job substantially equal to those of her male colleagues. Accordingly, she brings a claim for wage discrimination under the EPA, which prohibits employers from paying an employee at a rate less than that paid to employees of the opposite sex for equal work.  *See* 29 U.S.C. § 206(d)(1).

12

An employee establishes a prima facie case under the EPA by demonstrating that her employer paid male employees higher wages for jobs requiring "equal skill, effort, and responsibility, and which are performed under similar working conditions." *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995) (internal quotations omitted).  Once an employee establishes a prima facie case, the burden shifts to the employer to prove by a preponderance of the evidence that the disparity is justified by one of the four exceptions enumerated in the EPA.  *See Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974).  Those four exceptions are: "(I) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex."  29 U.S.C. § 206(d)(1).  If the employer establishes an affirmative defense, the employee must produce affirmative evidence indicating that the proffered reason for the disparity is actually pretext for sex discrimination.  *See Brennan*, 417 U.S. at 195.

In the present case, Mrs. Henderson points to four men—Roger Eychner, Thomas Carter, Billy Cash, and David Clark—who she contends were paid more for doing the same work.  The parties agree that the men were paid more than Mrs. Henderson but dispute whether she performed the same work as these men.  However, even assuming *arguendo* that Mrs. Henderson's job duties were the substantial equivalent of her comparators and that Mrs. Henderson established a prima facie case under the EPA, Mid-South is still entitled to summary judgment; it offers a valid affirmative defense under the Act, which Mrs. Henderson fails to rebut.  Mid-South explains that it paid Mrs. Henderson less than her male comparators because the men each possessed skills and experience that Mrs. Henderson did not.  Skills and experience

13

are legitimate factors other than sex upon which an employer can base its decision to pay employees different wages. *See Irby*, 44 F.3d at 956.

Because Mid-South offers a non-discriminatory reason for the disparate pay, the burden shifts to Mrs. Henderson to show pretext. Mrs. Henderson attempts to meet this burden by arguing that the men's skills and experience are irrelevant because the Molding Supervisor position did not require any technical skills or knowledge, and, therefore, Mid-South's proffered reason for the disparate pay is pretext for gender discrimination. In support of her position, Mrs. Henderson cites *Miranda* for the proposition that "[o]nly the skills and qualifications *actually needed* to perform the job are considered" under the EPA analysis. 975 F.2d at 1533 (emphasis added). Contrary to Mrs. Henderson's contention, however, *Miranda* does not limit a court to considering only the skills and qualification actually needed to perform the job when assessing a defendant's *affirmative defense*. Instead, the language in *Miranda* addresses only what the court can consider in the context of a plaintiff's *prima facie* case. *See id.* The scope of what a court can consider under the EPA's fourth affirmative defense—that the differential in pay was based on any factor other than sex—is set forth in *Schwartz v. Fl. Bd. of Regents*, 954 F.2d 620 (11th Cir. 1991). In *Schwartz*, the Eleventh Circuit held that "[s]o long as subjective business justifications . . . are not overly subjective so as to render them incapable of being rebutted, they are legitimate factors to be considered." *Id.* at 623–24.

Mid-South's reliance on the men's skills and experience as a justification for their higher pay is not overly subjective and could be rebutted. Mrs. Henderson could have offered evidence that she had the same experience or could perform the same tasks as the men. *See Irby*, 44 F.3d at 956 (holding that experience is a legitimate factor because it can be rebutted by showing that

14

the plaintiff had equal or more experience).  However, Mrs. Henderson fails to do so.  The

court's inquiry under the EPA is not whether the employer's decision was prudent or correct, but

only whether it was pretext for discrimination.  *See Murray v. World Sav. Bank*, 215 F. Supp. 2d

1216, 1320–21 (S.D. Fla. 2002); *Wollenburg v. Comtech*, 201 F.3d 973, 976 (7th Cir. 2000)

(holding that an employer's decision to pay a man with 26 years of unrelated experience more

than a woman with 4 years of unrelated experience was a legitimate non-discriminatory reason

for the disparate pay).

In the present case, regardless of whether the men's skills and experience were necessary

for the Molding Supervisor position, Mid-South could have reasonably paid the men more based

upon their technical skills and expertise.  As such, Mrs. Henderson fails to rebut Mid-South's

affirmative defense, and Mid-South is entitled to summary judgment on this claim.

## C.  Mrs. Henderson's Title VII and § 1981 Claims

Mrs. Henderson brings numerous claims of race and gender discrimination under Title

VII and 42 U.S.C. § 1981.  Title VII and § 1981 "have the same requirements of proof and use

the same analytical framework."  *Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1330 (11th

Cir. 1998).  Therefore, the court will address Mrs. Henderson's Title VII claims with the

understanding that the analysis applies to her § 1981 claims as well.

### 1.  *Wage Discrimination - Count II*

Mrs. Henderson contends that Mid-South violated Title VII by discriminating against her

on the basis of her gender in setting her pay.  In cases, such as this, where a plaintiff relies on

circumstantial evidence to prove her case, courts apply the *McDonnell Douglas* burden-shifting

framework.  *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981).  To

establish a prima facie case of wage discrimination, a plaintiff must prove that (1) she is a member of a protected class; (2) she received low wages; (3) similarly situated comparators outside her protected class received higher wages; and (4) she was qualified to receive the higher wage. *See Cooper v. Southern Co.*, 390 F.3d 695, 740 (11th Cir. 2004), *overruled on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006). Assuming, without deciding, that Mrs. Henderson established a prima facie case, the burden then shifts to Mid-South to articulate a legitimate, non-discriminatory reason for the wage differential. *See Cooper*, 390 F.3d at 740.

As discussed in relation to Mrs. Henderson's EPA claim, Mid-South met its burden by showing that Mrs. Henderson lacked both the skills and experience of her male counterparts. Because Mid-South carried its burden of demonstrating that no genuine issues of fact existed regarding its affirmative defense under the EPA, Mid-South also meets its burden under Title VII. *See Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1533 (11th Cir. 1992) (holding that "Title VII . . . incorporate[s] the affirmative defenses from the Equal Pay Act").

As Mid-South articulated a legitimate non-discriminatory reason for the pay disparity, the burden shifts to Mrs. Henderson to demonstrate that Mid-South's proffered reason was pretext for intentional gender discrimination. *See Cooper,* 390 F.3d at 740. Mrs. Henderson again attempts to meet this burden by arguing that the men's skills were not necessary for the Molding Supervisor position. However, as discussed previously, regardless of whether the men's skills were required for the position, Mid-South's decision to pay the men more based upon those skills is not in itself evidence of pretext. As such, Mid-South is entitled to summary judgment on Mrs. Henderson's wage discrimination claim.

16

2.      *Race and Gender Based Disparate Treatment Claims - Count I and II*

In her complaint, Mrs. Henderson contended that Mid-South discriminated against her by transferring her to a position with eight-hour instead of twelve-hour shifts, excluding her from production meetings, and terminating her employment with Mid-South.  In her response to Mid-South's motion for summary judgment, Mrs. Henderson only asserts that a reasonable jury could find for her on the basis of her *termination* from Mid-South.  Because Mrs. Henderson fails to address the other instances of Mid-South's alleged discriminatory conduct, she has abandoned these grounds for her discrimination claim.  *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned").  Therefore, the question before this court is whether Mid-South is entitled to summary judgment on Mrs. Henderson's claim of gender and race discrimination based upon her termination.  For the reasons discussed below, this court concludes that Mid-South is not.

The *McDonnell Douglas* framework discussed above applies to this claim.  *See Burdine*, 450 U.S. at 252–53.  To establish a prima facie case of disparate treatment, Mrs. Henderson must show that (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer replaced her with someone outside of her protected class; and (4) she was qualified to do the job.  *See Walker v. NationsBank of Fla. N.A.*, 53 F.3d 1548, 1556 (11th Cir. 1995).  Mid-South concedes that Mrs. Henderson is a member of a protected class, that her termination from Mid-South constitutes an adverse employment action, and that she was qualified to do her job.  However, Mid-South contends that Mrs. Henderson cannot show

17

that she was replaced by someone outside of her protected class as Mid-South did not hire another employee to fill her position.

In response, Mrs. Henderson argues that she meets the third element because she was replaced by Mr. Robertson, a white male.  This court agrees.  "A plaintiff may demonstrate that [she] was replaced by showing that, after [her] termination, some of [her] former responsibilities were delegated to another employee, in addition to that other employee's own responsibilities." *Mazzeo v. Color Resolutions Intern., LLC*, 746 F.3d 1264, 1271 (11th Cir. 2014).  In the present case, Mid-South concedes that Mr. Robertson assumed Mrs. Henderson's responsibilities following her termination.  (Doc. 26-13, at 4).  As such, Mrs. Henderson points to sufficient evidence to raise a genuine issue of fact as to whether she was replaced by someone outside her protected class.

Because Mrs. Henderson establishes her prima facie case, the burden shifts to Mid-South to offer a legitimate non-discriminatory reason for terminating her.  Mid-South again contends that it terminated Mrs. Henderson for her absenteeism and failure to call-in and report her absences.  However, as discussed previously, Mrs. Henderson presents sufficient evidence to create a genuine issue of fact as to whether Mid-South's proffered reason is pretextual.  As such, Mid-South is not entitled to summary judgment on Mrs. Henderson's gender and race discrimination claims.

### 3. *Retaliation Claim - Count IV*

Mrs. Henderson alleges that Mid-South retaliated against her for complaining to Jean Lawson and Human Resources Director Mark Weaver in June and August of 2012 about what Mrs. Henderson perceived to be race and gender-based discrimination.  The *McDonnell Douglas*

framework also applies to Mrs. Henderson's Title VII retaliation claim.  *See Brown v. Ala. Dept. of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010).  To establish a prima facie case of retaliation, a plaintiff must show that "(1) [she] engaged in a statutorily protected activity; (2) [she] suffered an adverse employment action; and (3) [she] established a causal link between the protected activity and the adverse action."  *Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009).  In the present case, Mrs. Henderson satisfies all three elements of her prima facie case.

As to the first element, Mid-South contends that Mrs. Henderson did not engage in protected activity when she complained about Mr. Robertson's statement because Mrs. Henderson could not reasonably believe that Mr. Robertson's statement was unlawful.  A plaintiff engages in "protected activity" not only when she protests about her employer's unlawful activity but also when she protests about lawful activity, if she has a *reasonable* good faith belief that her employer's practices were illegal.  *See Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997).

Mid-South contends that Mr. Robertson's statement to Mrs. Henderson that "[i]t's going to look like favoritism because you're promoting a black person and you're black" could not reasonably be interpreted as a directive to not promote a black employee because of her race.  The court disagrees and finds that Mrs. Henderson's interpretation of the statement is not so unreasonable as to justify entering summary judgment on this claim.  At any rate, Mrs. Henderson not only complained about Mr. Robertson's statement to her but also complained about being paid less than her white, male counterparts.  As such, the court finds that Mrs. Henderson engaged in statutorily protected activity.  This court also concludes that Mrs. Henderson's termination from Mid-South constitutes an adverse employment action.

Finally, Mrs. Henderson presents sufficient evidence to raise a genuine issue of fact as to whether her protected activity was causally connected to her subsequent termination.  A plaintiff may establish causation by showing a "close temporal proximity" between the employer's awareness of the protected activity and the adverse employment action.  *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999).

In the present case, Mrs. Henderson complained about race and gender discrimination in July and August 2012.  Mid-South terminated Mrs. Henderson's employment in September—one month after she made her second complaint.  This close temporal proximity raises a genuine dispute of material fact as to whether Mrs. Henderson's protected activity was causally connected to Mid-South's adverse employment actions.

Because Mrs. Henderson establishes the three elements of her prima facie case, the burden shifts to Mid-South to offer a legitimate, non-retaliatory reason for the challenged employment action.  Mid-South again relies on Mrs. Henderson's alleged failure to comply with Mid-South's call-in policy.  However, as this court explained above, Mrs. Henderson presents sufficient evidence to raise an issue of pretext.  Therefore, Mid-South is not entitled to summary judgment on Mrs. Henderson's retaliation claim.

## IV.  CONCLUSION

For the reasons discussed above, the court will GRANT Mid-South's motion for summary judgment IN PART. The court will ENTER SUMMARY JUDGMENT in favor of Mid-South as to the Wage Discrimination Claim in Count II and the Equal Pay Act claim Count III.  The court will DENY SUMMARY JUDGMENT as to the Race Discrimination claim in Count I, the Gender Discrimination claim in Count II, the Retaliation claim in Count IV, and the

Family Medical Leave Act Interference and Retaliation claim in Count V.  This court will

simultaneously enter a separate Order to this effect.

      DONE and ORDERED this 2nd day of March, 2015.

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE