FILED
2016 Sep-27  PM 03:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **TARA HENDERSON,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | |
| | ] | **4:13-cv-01166-KOB** |
| **MID-SOUTH ELECTRONICS, INC.,** | ] | |
| | ] | |
| **Defendant.** | ] | |
| | ] | |
| | ] | |

## MEMORANDUM OPINION

The court held a bench trial in this case in December 2015, during which employee Tara Henderson proved that her employer, Mid-South Electronics, Inc., engaged in race discrimination and FMLA interference. Mrs. Henderson initially claimed race discrimination in promotion, discipline and termination; gender discrimination in wages; gender discrimination in termination; wage discrimination in violation of the Equal Pay Act; retaliation upon Mrs. Henderson's complaining of race and gender discrimination, in violation of Title VII and 1981; and FMLA interference and retaliation. The court granted summary judgment to MSE as to the gender and EPA wage discrimination claims and Mrs. Henderson abandoned her FMLA retaliation claim at trial.

After the bench trial, the court awarded Mrs. Henderson $18,948.62 in damages and determined that she would be entitled to an award of her reasonable attorneys' fees and court costs, upon proof of such amount. This case is now before the court on the Plaintiff's "Motion for Attorney's Fees and Expenses." (Doc. 60).

1

In her original Motion for attorneys' fees, Mrs. Henderson requested $186,470.00 in attorneys' fees and $10,703.38 in expenses, for a total of $197,173.38. Following the Defendant's "Response to Plaintiff's Motion for Attorney Fees and Expenses" (Doc. 64), Mrs. Henderson reduced her request for fees of $184,660.00[1] and expenses of $10,162.57 for a total of $194,822.57. *See* "Plaintiff's Fee Petition Reply." (Doc. 65).

For the reasons set out in this Opinion, the court will **GRANT** Mrs. Henderson's "Motion for Attorney's Fees and Expenses." Specifically, the court will **AWARD** Mrs. Henderson $184,670.00 in attorneys' fees and $10,112.15 in costs, for a total of $194,782.15.

## I.    Discussion

Mrs. Henderson seeks recovery of her attorneys' fees under 29 U.S.C. § 2617(a)(3) and 42 U.S.C. § 2000e-5(k), which allow the court to award reasonable attorneys' fees and court costs to the prevailing party in, respectively, FMLA and Title VII cases. Defendant has not contested Mrs. Henderson's status as a prevailing party, but argues that her requested fee award is unreasonable.

### A.    Reasonable Hourly Rate

The "starting point" in the objective determination of the value of lawyers' services is to calculate a "lodestar" figure, that is, "to multiply hours reasonably expended by a reasonable hourly rate." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The Supreme Court has "established a

---

[1] The reduced figure should be $184,670.00 after the subtraction of one time entry, based on a calculation of 11 hours multiplied by a $250 hourly rate = $2,750.00, but Plaintiff has used the figure of $2,760.00. In calculating the fee award, the court will only subtract $2,750.00 from the original fee request.

'strong presumption' that the lodestar represents the 'reasonable fee' . . . ." *Burlington v. Dague*, 505 U.S. 557, 562 (1992) (citing *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565) (1986) (*Delaware Valley I*)). In determining the lodestar figure, the court may take into account the factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974).[2] *See Hensley,* 461 U.S. at 434 n.9.

> The twelve factors are as follows:
>
>> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10 the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson*, 488 F.2d at 717-19. Many of the *Johnson* factors "are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434 n.9; *see Delaware Valley I*, 478 U.S. at 566 (reaffirming that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee").

Mrs. Henderson attaches to her petition an itemized billing statement, which includes the hours her attorneys worked on this case as well as those attorneys' hourly rates. Mrs. Henderson requests that the court find those hourly rates to be reasonable. Defendant's counsel has objected to those rates as unreasonable.

"A reasonable hourly rate is the prevailing market rate in the relevant legal community

---

[2]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299 (citing *Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984)). The burden of producing satisfactory evidence that the rates proffered coincide with prevailing market rates rests upon the petitioner. *See Norman*, 836 F.2d at 1299; *N.A.A.C.P. v. City of Evergreen*, 812 F.2d 1332, 1338 (11th Cir. 1987) (citing *Blum*, 465 U.S. at 896 n.11). To meet that burden, petitioner must offer "more than the affidavit of the attorney performing the work." *Norman*, 836 F.2d at 1299 (citing *Blum*, 465 U.S. at 896 n.11). Satisfactory evidence would "speak to rates actually billed and paid in similar lawsuits" and can be adduced through either opinion evidence or direct evidence of lawyers' fees charged in similar cases. *Id*.

The relevant legal community in this case is the Northern District of Alabama. *See Knight v. Alabama*, 824 F. Supp. 1022, 1027 n.1 (N.D. Ala. 1993) ("The relevant legal community is the area in which the court sits, which in this case is the Northern District of Alabama.").

The district court has discretion to "interpolate the reasonable rate based upon an analysis of the skills . . . which were exhibited by the attorney in the case at bar," and the market rates in the relevant community; where the submissions regarding reasonable rates are inadequate, the court may rely on its own expertise. *Norman*, 836 F.2d at 1301, 1303; *see Hensley*, 461 U.S. at 437 (emphasizing that the district court has discretion in determining the amount of attorneys' fees awarded).

In the instant case, Mrs. Henderson has moved to recover attorneys' fees for four attorneys and one paralegal who worked on her case. Mrs. Henderson asks the court to approve the following rates as reasonable: Jon Goldfarb—$450; Daniel Arciniegas—$250; Lachlan

4

Smith—$250; Sean I. Goldfarb—$250; and Brooke Henderson—$100.

Jon Goldfarb has 24 years of experience in civil rights litigation, with a focus on plaintiffs' complex litigation. He has lectured on topics relating to employment discrimination and has received noted national recognition for his accomplishments as an employment law attorney. Daniel Arciniegas graduated law school in 2006 and has seven years of employment discrimination and civil rights litigation experience with Wiggins Childs, including fifteen federal trials; he has been locally recognized for his achievements as a lawyer. Further, the court has had the opportunity to observe these attorneys in numerous cases—Mr. Goldfarb for almost 15 years and Mr. Arciniegas since he began practicing with Wiggins Childs. The court notes that their experience and abilities well justify the requested rates.

Lachlan Smith graduated law school in 2009 and has six years of civil rights and employment discrimination litigation experience with Wiggins Childs. He has recently been included as a "Rising Star" in the "Alabama Super Lawyers" list. Sean Goldfarb graduated law school and was then admitted to the Alabama bar in 2012. Brooke Henderson is a paralegal at Wiggins Childs.

To support the reasonableness of her attorneys' fees, Mrs. Henderson has offered an affidavit from Jon Goldfarb (Doc. 60-1); an affidavit from Heather Leonard, a Birmingham attorney who has focused her practice on employment and civil rights litigation since 1998 (Doc. 60-3); and an affidavit from Allen Arnold, a Birmingham employment law attorney who was admitted to the Alabama bar in 2004 (Doc. 60-11). Mr. Goldfarb avers that the attorneys' fees requested by Plaintiff are reasonable for this case.

Ms. Leonard and Mr. Arnold both assert that the rates of Jon Goldfarb, Daniel

Arciniegas, Lachlan Smith, and Sean Goldfarb are reasonable rates for plaintiffs' civil rights attorneys in the Birmingham market with their levels of skill. Ms. Leonard states that the going hourly rate for non-contingent employment litigation work by plaintiffs' attorneys in Alabama is $275–$550. Mr. Arnold gives the figure of $250–$500. Ms. Leonard and Mr. Arnold also both state that Brooke Henderson's rate is reasonable for paralegal work and within the typical Alabama range of $85–$100 an hour. The opinions expressed by Ms. Leonard and Mr. Arnold further support the reasonableness of the rates requested.

Mrs. Henderson has also offered several court orders and opinions from this district awarding attorneys' fees at rates of $200–$550 ($85–$125 for paralegals) to these and other lawyers in comparable litigation. The rates awarded these attorneys in other cases further bolster the reasonableness of the requested rates.

Defendant objects to Mrs. Henderson's attorneys' rates because Defendant's attorneys charged the Defendant much lower rates than the rates Mrs. Henderson's attorneys request. Defendant also suggests that the Birmingham market is an inappropriate comparator for determining the reasonable rate for Mrs. Henderson's attorneys because this case was filed in the Middle Division of the Northern District of Alabama, which does not include Birmingham.

First, the rate Defendant's counsel charged compares apples to oranges. The *Johnson* factors "customary fee," "fixed or contingent fee," and "nature and length of the professional relationship with the client" require the court to distinguish between contingent fee rates sought by plaintiffs' employment attorneys and rates charged by defendants' employment attorneys, who get paid regardless of the outcome of the case. Plaintiffs' lawyers, by nature, frequently work on a contingency fee basis. Defendant companies often have ongoing relationships with their

6

attorneys that enable them to pay lower hourly rates.

Second, the "relevant legal community" for determining the reasonableness of a lawyer's rate is the *district* in which the court sits, not a specific *division* within that district. *See Knight*, 824 F. Supp. at 1027 n.1 ("The relevant legal community is the area in which the court sits, which in this case is the Northern District of Alabama."). Regardless, the court finds no flaw in Mrs. Henderson's attorneys using the Birmingham market in the Northern District as the relevant legal community for their rates, especially because Defendant has not offered evidence that the Birmingham market—in which many of the Northern District courts sit—is not representative of the larger Northern District market.

The court has considered the other *Johnson* factors and finds that the requested hourly rates for Jon Goldfarb, Daniel Arciniegas, Lachlan Smith, Sean I. Goldfarb, and Brooke Henderson are reasonable and in accordance with the prevailing market rate in the Northern District of Alabama for similar services by lawyers of reasonably comparable skills, experience, and reputation.

### B.   Reasonable Hours Expended

The next step in computing the lodestar figure is to establish the number of hours reasonably expended. *See Norman*, 836 F.2d at 1301. The Supreme Court requires a petitioner to exercise "billing judgment" in the hours submitted; "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original)). However, if the petitioner submits "hours that are excessive, redundant, or otherwise unnecessary," the court should reduce the number of hours accordingly. *Id.* "'[O]bjections and

7

proof from fee opponents' concerning hours that should be excluded must be specific and 'reasonably precise.'" *ACLU of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 2000) (quoting *Norman*, 836 F.2d at 1301). The decision about what hours are reasonably necessary "must be left to the discretion of the court," but if the court disallows fees for work performed, it should explain which hours are disallowed and why they are improper. *Norman*, 836 F.2d at 1301, 1304.

In the instant case, Mrs. Henderson's Motion attached attorney time records totaling 531.45 hours and non-attorney time records totaling 26 hours over a period of *two-and-a-half years* of this litigation. *See* (Doc. 60-2). Multiplied times billing rates, the attorneys' fees total $186,470.00. Plaintiff asserts that her counsel have excluded any arguably duplicative tasks from billing. *See* (Doc. 60 at 8); (Doc. 60-1). The court has examined the hours submitted and considered the objections to them.

Defendant first argues that excessive hours should be stricken from the total. Defendant objects that Plaintiff's counsel overstaffed this case, because four different attorneys billed time to it and three different attorneys and a paralegal worked on the trial. But a case staffed by multiple attorneys does not inherently indicate duplication of work; hours should be reduced only if the attorneys are "*unreasonably* doing the *same* work" and being compensated accordingly. *Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983). MSE does not point to specific examples of duplicative effort (with one exception, discussed below), but argues that a bench trial requires less exacting preparation than a jury trial. However, "[g]eneralized statements that the time spent was reasonable or unreasonable are not particularly helpful and not entitled to much weight." *Norman*, 836 F.2d at 1301 (citing *Hensley*, 461 U.S. at 439 n.15).

8

Moreover, the court disagrees with Defendant's position. Arguably the opposite is true, as exemplified by the lengthy proposed findings of fact and conclusions of law prepared by the parties here; these requirements necessitated many extra hours of pre-trial preparation. Evidence preparation should not differ strikingly between a bench trial and a jury trial.

The court also disagrees with Defendant's specific contention that the time billed by Mr. Arciniegas in preparing to *defend* Plaintiff's deposition was duplicative because Mr. Goldfarb later billed time preparing to *take* depositions of different people. The court will not punish Plaintiff's counsel for choosing to staff a case with more than one attorney or to assign some work to a less expensive associate.

Defendant also argues that Plaintiff's counsel spent a disproportionate amount of time on trial preparation because defense counsel billed for one-fourth of the time documented by Plaintiff's counsel. This supposed disparity does not prove unreasonable billing; "[a]fter all, as a general proposition, it takes more effort to win than it takes to lose." *Dumas v. Tyson Foods, Inc.*, 139 F. Supp. 2d 1243, 1247 (N.D. Ala. 2001).

The court finds that the time expended by Plaintiff's counsel on this case was not excessive or redundant, with one exception already conceded by Plaintiff. Mrs. Henderson agrees in her Reply that the time billed by Mr. Arciniegas for notetaking at trial (11 hours = $2750.00) is redundant. Excluding that entry reduces Plaintiff's fee request to $183,720.00.

In her Reply, Mrs. Henderson requests an additional 3.8 hours be billed at Mr. Smith's rate of $250 for the preparation of the reply brief. Defendant has not otherwise contested the hours expended briefing the attorneys' fees request, and hours expended in pursuit of attorneys' fees are compensable. *See Doucet ex rel. Doucet v. Chilton Cty. Bd. of Educ.*, 65 F. Supp. 2d

9

1249, 1260  (M.D. Ala. 1999) (citing *Johnson v. Mississippi*, 606 F.2d 635, 638 (5th Cir. 1979)).

Thus, the court finds this addition of $950.00 (taking the total attorneys' fee request to

$184,670.00) to be reasonable.

Subject to the discussion above, the court finds that the hours submitted by Plaintiff are

otherwise reasonable, and that no *Johnson* factors weigh in favor of increasing or decreasing the

hours.

### C.   Adjustments to the Lodestar

The Supreme Court has acknowledged that, in some cases, the initial calculation of the

lodestar "does not end the inquiry." *Hensley*, 461 U.S. at 434. Downward adjustments of an

initial lodestar calculation may sometimes be necessary to obtain a reasonable fee award, because

the "results obtained" factor "is particularly crucial where a plaintiff is deemed 'prevailing' even

though he succeeded on only some of his claims for relief." *Id.* Where a plaintiff has succeeded

on only some of her claims for relief, fees based on the initial lodestar calculation may represent

an excessive amount. *See id.* at 436.

The "most critical factor" to take into account at this stage is the "degree of success

obtained.," because when unsuccessful claims and the successful ones share "a common core of

facts or . . . related legal theories," division of hours, and thus fees, on a claim-by-claim basis

may be impractical. *Hensley*, 461 U.S. at 436. A plaintiff should not be penalized solely for

raising alternative legal grounds in good faith if the court does not reach those alternate grounds.

*Id.* at 435. The court is accorded discretion in making the determination of how much to adjust,

or whether to adjust at all, and "no precise rule or formula" exists for the court to follow.

*Hensley*, 461 U.S. at 436-37.

Mrs. Henderson achieved only partial success; she initially sought to recover on six theories, proceeded to trial on four, and received a successful verdict on only two. However, she argues, and the court agrees, that her causes of action constituted two separate claims of wage discrimination and wrongful termination, with each of the wrongful termination claims presenting an alternative theory of relief. Mrs. Henderson proceeded to trial on each of these termination causes of action after they survived summary judgment, and the court will not penalize her for raising in good faith alternative grounds for relief. The race and gender discrimination, retaliation, and FMLA interference and retaliation claims arose from a common core of related facts and were based on related legal theories, such that "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435.

The court has already determined that all but a very few of the hours expended on this litigation were reasonable. Mrs. Henderson would not have been more "successful," i.e., would not have recovered any more money, even if the court had found for her on her gender discrimination and Title VII and § 1981 retaliation claims. Further, her wage discrimination claim constituted a relatively small aspect of her overall case and so the court finds that the fee award should not be reduced based on the failure of that claim.

At trial, Mrs. Henderson's claimed backpay totaled $212,848.60. Having determined that Mrs. Henderson was only entitled to backpay for the period covered by MSE's thirteen-week salary continuation policy, the court returned a verdict of $7,974.31 in backpay, $7,974.31 in liquidated damages, and $3,000.00 in compensatory damages, for a total award of $18,948.62. Defendant asks that the fee award be reduced by 90% to account for this disparity or, in the

11

alternative, by two-thirds, in proportion to the number of Mrs. Henderson's claims that were successful. With the nature of Plaintiff's success in mind, the court declines to reduce her attorneys' fees. Congress recognized that employment discrimination cases often would result in relatively small recoveries for plaintiffs; yet to encourage the filing of such cases to remedy the wrongs of discrimination, provided for the recovery of attorneys' fees. *See City of Riverside v. Rivera*, 477 U.S. 561, 576-78 (1986) (discussing Congress's purpose in enacting 42.U.S. § 1988, the primary fee-shifting statute for civil rights actions that provides for recovery of reasonable attorneys' fees); *Northcross v. Bd. of Educ. of Memphis City Schs.*, 412 U.S. 427, 428 (1973) (per curiam) (stating that the substantially similar language of fee-shifting statutes is "a strong indication" that they should be interpreted identically). Accordingly, the court will award Mrs. Henderson $184,670.00 in attorneys' fees.

      D.    <u>Costs</u>

Under Federal Rule of Civil Procedure 54, a prevailing party should recover the costs of litigation. *See* F.R.C.P. 54(d)(1). The FMLA and Title VII enforcement provisions also provide for recovery of costs. *See* 29 U.S.C. 2617(a)(3) (2012) ("The court in such an action shall . . . allow . . . other costs of the action to be paid by the defendant."); 42 U.S.C. § 2000e-5(k) (2012) (permitting the court to award the prevailing party "a reasonable attorney's fee . . . *as part of the costs*"); *see also Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983) (providing for recovery under § 1988 of all reasonable costs of litigation, with the exception of routine office overhead and noting that "reasonable" is to be construed liberally).

Here, Mrs. Henderson has requested reimbursement for the costs of litigating this suit and provided an itemized list of expenses totaling $10,703.38. Mrs. Henderson has conceded that the

filing fee of $400.00 was double-billed and has also agreed to remove the charge of $29.81 for meals during trial. Additionally, Mrs. Henderson has altered the cost of one 5" binder from $144.00 to $36.00, the cost of another 5" binder included in the itemized list.

MSE objects to the entries for "Scan," "Fax," and "Prints" as being unreasonably vague. MSE also contends that the entries for "LexisNexis CourtLink" and "LexisNexis" are routine office overhead and do not match specific time billing. Finally, MSE argues that the $15.00 expense for a flash drive is general overhead. In reply, Mrs. Henderson argues that the scanning, printing, and faxing entries are normal to any civil case, that online research is compensable as part of the cost of litigation, and that her counsel's firm does not reuse flash drives between cases because of confidentiality concerns.

The court finds that the scanning, printing, and faxing entries are not unreasonable for a case of this complexity and duration and that requiring Plaintiff's counsel to more specifically annotate these entries would be unreasonable. The court additionally finds that the LexisNexis entries are compensable. *See In re UnitedHealth Grp. Inc. Shareholder Derivative Litigation*, 631 F.3d 913, 918-19 (8th Cir. 2011) (reviewing the state of other circuits' law and holding that the district court did not abuse its discretion in awarding online research expenses in addition to hourly rates). However, two LexisNexis charges for research in January 2014 do not correlate to billing entries and do not specify what research was conducted, so the court will exclude those two charges (totaling $50.42). Finally, the court finds that the $15 charge for a single-use flash drive is not excessive, given the Plaintiff's valid security reason for not reusing flash drives from case to case. Thus, the court will deduct the charges Plaintiff has already conceded are unreasonable in addition to the January LexisNexis charges. The court will award $10,112.15 in

13

costs.

## II.    Conclusion

The court **GRANTS** Plaintiff's Motion and **AWARDS** $184,670.00 in attorneys' fees and $10,112.15 in costs, for a total of $194,782.15. The court will enter a separate Order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this 27th day of September, 2016.

_Karon O. Bowdre_
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE